No. 23-30033

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

CALEB REESE, et al.,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, et al.,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Western District of Louisiana

No. 6:20-cv-1438
The Honorable Robert R. Summerhays

## BRIEF OF AMICI CURIAE ILLINOIS, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

ALEX HEMMER
SARAH A. HUNGER
Deputy Solicitors General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202
sarah.hunger@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as amici curiae are all governmental entities.  5th Cir. R. 28.2.1.

/s/ Sarah A. Hunger
SARAH A. HUNGER
*Counsel of Record for Amici*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES.................................. 1

SUMMARY OF ARGUMENT................................................................. 2

ARGUMENT............................................................................................. 5

I.   The Second Amendment Allows Governments To Enact Measures
     To Promote Gun Safety And Protect Against Gun Violence That
     Are Consistent With Historical Tradition. ..................................... 5

II.  The Challenged Statutes Are Consistent With Measures Taken By
     Many States And Upheld On Historical Grounds By Courts Across
     The Country.................................................................................. 10

III. The District Court Correctly Rejected Plaintiffs' Claims.............. 18

CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

Page(s)

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ............................................................... 6-7, 19, 21

*Hirschfeld v. ATF,*
5 F.4th 407 (4th Cir. 2021) .................................................... 17

*Jones v. Bonta,*
34 F.4th 704 (9th Cir. 2022) ................................................. 17

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ............................................................... 6-7

*Medtronic, Inc. v. Lohr,*
518 U.S. 470 (1996) ............................................................... 5

*National Rifle Ass'n v. ATF,*
700 F.3d 185 (5th Cir. 2012), ............................................... 2-3, 15, 17, 19

*National Rifle Ass'n v. Bondi,*
61 F.4th 1317 (11th Cir. 2023) ............................................. 4, 16-17, 20-23

*National Rifle Ass'n, Inc. v. Swearingen,*
545 F. Supp. 3d 1247 (N.D. Fl. 2021) .................................. 20

*New York State Rifle & Pistol Ass'n v. Bruen,*
142 S. Ct. 2111 (2022) ........................................................... 3, 6-9, 15, 21

*Lara v. Evanchick,*
534 F. Supp. 3d 478 (W.D. Pa. 2021) .................................. 17

*People v. Mosley,*
2015 IL 115872 ........................................................................ 17

*Powell v. Tompkins*,
   926 F. Supp. 2d 367 (D. Mass. 2013) .................................................. 17

*United States v. Lopez*,
   514 U.S. 549 (1995) ............................................................................. 5

*United States v. Morrison*,
   529 U.S. 598 (2000) ............................................................................. 5

## STATUTES AND REGULATIONS

18 U.S.C. § 922 ...................................................................................... 2

Alaska Stat.
   § 11.61.220 .......................................................................................... 13
   § 18.65.705 .......................................................................................... 13

Ariz. Rev. Stat.
   § 13-3102 .............................................................................................. 13
   § 13-3112 .............................................................................................. 13

Ark. Code § 5-73-309 ............................................................................. 13

Cal. Penal Code
   § 27505 ........................................................................................... 11-12
   § 27510 ........................................................................................... 11-12

Col. Rev. Stat.
   § 18-12-112.5 ...................................................................................... 11
   § 18-12-203 .......................................................................................... 13

Conn. Gen. Stat.
   § 29-28 .................................................................................................. 12
   § 29-34 .................................................................................................. 11
   § 29-35 .................................................................................................. 12
   § 29-36f ................................................................................................ 14

D.C. Code Ann.
§ 7-2502.03 ........................................................ 14
§ 7-2509.02 ........................................................ 12
§ 22-4507 .......................................................... 11

Del. Code Ann. tit. 11, § 1448 ........................................... 12-14

Del. Code Ann. tit. 24,
§ 901................................................................ 11
§ 903 .............................................................. 11

Fla. Stat.
§ 790.053........................................................... 12
§ 790.06............................................................ 12
§ 790.065.......................................................... 11-12

Ga. Code
§ 16-11-125.1 ..................................................... 12
§ 16-11-126 ....................................................... 12
§ 16-11-129 ....................................................... 12-13

Haw. Rev. Stat. Ann.
§ 134-2 ........................................................ 11-12, 14
§ 134-9 ............................................................ 13

430 Ill. Comp. Stat.
65/2 ............................................................... 14
65/3 .............................................................. 11-12
65/4 .............................................................. 11-12, 14
66/25 ............................................................. 13

720 Ill. Comp. Stat. 5/24-1 ............................................ 13

Iowa Code § 724.22.................................................... 11-12, 14

Ky. Rev. Stat. § 237.110 ............................................... 13

La. Rev. Stat. § 40:1379.3 ............................................. 13

Mass. Gen. Laws ch. 140,
    § 130 ........................................................................... 12
    § 131 ..................................................................... 13, 14
    § 131E ......................................................................... 12

Md. Code Ann., Pub. Safety
    § 5-101 ........................................................................ 14
    § 5-133 ................................................................... 13, 14
    § 5-134 ........................................................................ 12

Mich. Comp. Laws
    § 28.422 ...................................................................... 12
    § 28.425b ..................................................................... 13

Minn. Stat. § 624.714 ..................................................... 13

Mo. Rev. Stat. § 571.080 ............................................... 12

Neb. Rev. Stat.
    § 69-2403 .................................................................... 12
    § 69-2404 .................................................................... 12
    § 69-2433 .................................................................... 13

Nev. Rev. Stat. § 202.3657 ........................................... 13

N.J. Stat. Ann.
    § 2C:58-3 ............................................................... 12-13
    § 2C:58-3.3 ................................................................. 12
    § 2C:58-4 .................................................................... 13
    § 2C:58-6.1 ............................................................ 12, 14

N.M. Stat. § 29-19-4 ..................................................... 13

N.Y. Penal Law § 400.00 ........................................... 12-14

N.C. Gen. Stat. § 14-415.121 ........................................ 13

Ohio Rev. Code Ann.
   § 2923.125 ........................................................................... 13
   § 2923.21 ............................................................................. 12

Okla. Stat. tit. 21 § 1272 ........................................................ 13

Or. Rev. Stat. § 166.291 ......................................................... 13

18 Pa. Cons. Stat. § 6109 ....................................................... 13

R.I. Gen. Laws
   § 11-47-11 .......................................................................... 13
   § 11-47-18 .......................................................................... 13
   § 11-47-35 .......................................................................... 12
   § 11-47-37 .......................................................................... 12

S.C. Code § 23-31-215 ........................................................... 13

Utah Code
   § 76-10-505 ........................................................................ 13
   § 76-10-523 ........................................................................ 13

Vt. Stat. Ann. tit. 13, § 4020 ................................................. 12

Va. Code § 18.2-308.02 ........................................................... 13

Wash. Rev. Code Ann.
   § 9.41.070 ........................................................................... 13
   § 9.41.240 ...................................................................... 12, 14

Wis. Stat. § 175.60 .................................................................. 13

Wyo. Stat. § 6-8-104 ............................................................... 13

## OTHER AUTHORITIES

Kopel, David B. & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 496 (2019) ......................... 19

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin submit this brief in support of Defendants-Appellees the Bureau of Alcohol, Tobacco, Firearms and Explosives; Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and Merrick Garland, in his official capacity as United States Attorney General, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

The amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Nat'l Rifle Ass'n of Am., Inc. v. McCraw* ("*NRA II*"), 719 F.3d 338, 348 (5th Cir. 2013) (States have an "important" interest in "advancing public safety by curbing violent crime"). To serve that interest, a majority of States have historically implemented measures that regulate the sale and use of, and access to,

firearms for individuals under the age of 21. Although the States have reached different conclusions on how best to regulate in this area, they share an interest in protecting their right to address the problem of gun violence in a way that is both consistent with the Nation's historical tradition and tailored to the specific circumstances in their States. A decision that enjoins the longstanding federal prohibition on the sale of handguns and handgun ammunition by federally licensed retailers to individuals under the age of 21 would interfere with this interest. Accordingly, the amici States urge this Court to affirm the district court's judgment.

## SUMMARY OF ARGUMENT

For almost sixty years, federal law has prohibited federally licensed firearms retailers from selling handguns and ammunition for handguns to individuals under the age of 21. *See* 18 U.S.C. § 922(b)(1), (c)(1). Congress enacted that "calibrated" statutory restriction, *Nat'l Rifle Ass'n v. ATF* ("*NRA I*"), 700 F.3d 185, 209 (5th Cir. 2012), after finding that individuals under that age accounted for a disproportionate share of violent crimes, including murder, rape, and aggravated assault, 114 Cong. Rec. 12,279, 12309 (1968) (statement of Sen. Dodd).

Plaintiffs challenge this restriction on the ground that it unduly infringes upon the Second Amendment rights of young people.  But this Court has rejected that claim before, *see NRA I*, 700 F.3d at 204, based on a historical record that provides abundant evidence of a tradition limiting young people's access to arms, and the district court correctly reasoned that the Court's analysis remains sound even after the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).  ROA.1152.  As the district court explained, this Court's opinion in *NRA I* relied on historical evidence that the Founders did not understand people under the age of 21 to enjoy full Second Amendment rights and that the States had enacted varied laws "restricting access to firearms by those under the age of 21." ROA.1152-53.  The amici States write to urge the Court to affirm the district court's decision.

First, as the amici States set out below, the Second Amendment allows governments to enact sensible and varied regulations designed to protect the public as long as those regulations are consistent with our Nation's historical tradition.  Exercising that authority, virtually all States and the District of Columbia have imposed age-based regulations

3

on the purchase, possession, or use of firearms within their borders, and many have maintained those laws for over 150 years. Although the content of these regulations differs from jurisdiction to jurisdiction, 19 States and the District of Columbia have established a minimum age requirement of 21 for individuals to purchase handguns—essentially mirroring the federal law at issue here. A decision setting aside the longstanding federal prohibition on handgun sales to young adults could call those statutes, and others, into question.

Second, the district court's conclusion was correct on the merits. The challenged statutes are "consistent with this Nation's relevant historical tradition of firearm regulation." *Nat'l Rifle Ass'n v. Bondi* ("*Bondi*"), 61 F.4th 1317, 1325 (11th Cir. 2023). They are comparable in every relevant way to regulations imposed by States on young people for over 150 years, including statutes enacted by at least 20 jurisdictions in the 1800s barring the sale of firearms to young people. Plaintiffs' arguments to the contrary lack merit: The history of state militia laws is neither probative of the Second Amendment's scope nor as uniform as plaintiffs assert, and the laws enacted in the 1800s by over 20 States

4

are relevant analogues under *Bruen*.  The district court's opinion should be affirmed.

## ARGUMENT

**I.    The Second Amendment Allows Governments To Enact Measures To Promote Gun Safety And Protect Against Gun Violence That Are Consistent With Historical Tradition.**

Although this case concerns a federal statute, plaintiffs' Second Amendment claim implicates fundamental principles of state authority. The States have long exercised their police power to protect the health, safety, and welfare of their residents.  In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).  These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders.  *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the

National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and import of the rights conferred by the Second Amendment.  Indeed, in each of its major Second Amendment opinions—*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)— the Court expressly acknowledged the important role that governments in general, and the States in particular, play in protecting residents from the harms of gun violence—a role that is consistent with our Nation's historical tradition.

To begin, in *Heller*, the Supreme Court made clear that the Second Amendment right to keep and bear arms is "not unlimited."  554 U.S. at 626.  The Court explained that although governments may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens on the Second Amendment right, they still possess "a variety of tools" to combat the problem of gun violence. *Id.* at 636.  They may, for example, implement measures prohibiting

6

certain groups of people from possessing firearms, such as "felons and the mentally ill," or "impos[e] conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. And the Court made the same point shortly thereafter in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see also id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.")

The Supreme Court's recent decision in *Bruen* preserves the substantial authority that governments retain in this area. At issue in *Bruen* was a New York statute that required all individuals, including law-abiding individuals, to show a "special need" to obtain a license to carry a handgun in public. 142 S. Ct. at 2122-24. The Court clarified that in a Second Amendment challenge to a statute restricting the possession or use of firearms, a court must ask whether the challenged statute is "consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. And it held that the New York statute at issue—unlike the licensing statutes employed by 43 other States, *id.* at 2138 n.9—failed that test, insofar as it imposed restrictions on conduct

that fell within the Amendment's scope and were inconsistent with historical practice. *Id.* at 2138. As the Court explained, history did not support a "tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.*

But the Supreme Court emphasized even as it reached that conclusion its intent to preserve governments' substantial authority to regulate the possession, sale, and use of firearms. For one, the Court explained, governments need not demonstrate that a firearms regulation is historically justified unless the party challenging that regulation shows that the conduct it burdens falls within the Second Amendment's text. *See id.* at 2129-30 (if the Second Amendment's "plain text covers an individual's conduct . . . the government *must then* justify its regulation" (emphasis added)); *id.* at 2141 n.11 (similar). For another, the Court elaborated, even once that threshold showing is met, governments can justify challenged regulations by pointing to a historical tradition of "relevantly similar" firearms regulations—a form of "reasoning by analogy." *Id.* at 2132. This approach was necessary, the Court added, because "[t]he regulatory challenges posed by firearms

today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.*

The historical inquiry demanded by the Second Amendment, in other words—as the Supreme Court emphasized—is not a "regulatory straightjacket." *Id.* at 2133; *accord id.* ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." (emphasis in original)). And multiple Justices wrote separately in *Bruen* to emphasize that the States and the federal government retain the authority to regulate firearms to protect the health and safety of their residents. Justice Kavanaugh, joined by the Chief Justice, concurred to emphasize the "limits of the Court's decision" and to note that, "[p]roperly interpreted, the Second Amendment allows a variety of gun regulations." *Id.* at 2162 (internal quotation marks omitted). And Justice Alito likewise concurred to note that *Bruen* "does not expand the categories of people who may lawfully possess a gun." *Id.* at 2157-58. Indeed, Justice Alito added, "federal law generally . . . bars the sale of a handgun to anyone under the age of 21," *id.*—the very restriction at issue in this case.

Taken together, then, *Heller*, *McDonald*, and *Bruen* emphasize that the States and the federal government retain a substantial measure of regulatory authority over firearms, presuming they act consistent with text, history, and tradition in regulating.

## II. The Challenged Statutes Are Consistent With Measures Taken By Many States And Upheld On Historical Grounds By Courts Across The Country.

Congress's decision to regulate the sale of handguns to young people is well within the substantial authority that governments retain in this area.  As the United States explains, even if young people under the age of 21 were considered part of "the People" within the meaning of the Second Amendment, the challenged statutes are consistent with the Nation's historical tradition, in that the federal government and the States have for over 150 years limited access to firearms for individuals under the age of 21.  U.S. Br. 31-38; *infra* pp. 19-22.

And Congress's choice is likewise consistent with those made in jurisdictions across the country, including by many amici States. Although the States have reached different conclusions on how best to regulate the sale of, use of, and access to firearms—as they have historically been permitted to do, *see supra* Section I—virtually every

State and the District of Columbia has determined that imposing *some* age-based limits on the possession, purchase, or use of firearms is appropriate to promote public safety and curb gun violence within its borders.

Indeed, many States have imposed age-based restrictions that are very similar to those enacted by Congress and challenged by plaintiffs here.  Nineteen States and the District of Columbia—California, Colorado, Connecticut, Delaware, Florida, Hawaii, Illinois, Iowa, Massachusetts, Maryland, Michigan, Missouri, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington, and the District of Columbia—have, like Congress, chosen to limit the circumstances under which people under the age of 21 can purchase firearms.  All 20 of these jurisdictions have enacted a measure analogous to the federal restrictions at issue here, generally prohibiting the sale of handguns by federally licensed dealers (or, in some cases, all sellers) to people under 21 (subject, in some cases, to exceptions).[1]  Several of these States

---

[1]  Cal. Penal Code §§ 27505(a); 27510; Col. Rev. Stat. 18-12-112.5(a.5); Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, §§ 901, 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Iowa Code §

likewise generally prohibit the sale of long guns to people under 21 (subject again, in some cases, to exceptions).[2]

Other States have adopted age-based firearms regulations in other contexts. For instance, many States have decided that it serves the interest of public safety to limit the circumstances under which those under the age of 21 may carry firearms in public. To that end, at least 15 jurisdictions—Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, Oklahoma, Rhode Island, South Carolina, and the District of Columbia—have concluded that people under the age of 21 should (in some States, subject to exceptions) not be able to carry certain firearms in public at all (that is, whether openly or concealed).[3] At least 19

---

724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Mo. Rev. Stat. § 571.080; Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1)(a), (12); Ohio Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240.

[2]  *E.g.*, Cal. Penal Code §§ 27505; 27510; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Vt. Stat. Ann. tit. 13, § 4020.

[3]  Conn. Gen. Stat. §§ 29-28(b), 29-35(a); D.C. Code § 7-2509.02(a)(1); Del. Code Ann. tit. 11, § 1448(a)(5); Fla. Stat. §§ 790.06(1), (2)(b), 790.053(1); Ga. Code §§ 16-11-125.1(2.1), 16-11-126(g)(1), 16-11-

additional States—Alaska, Arizona, Arkansas, Colorado, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Utah, Virginia, Washington, Wisconsin, and Wyoming—have enacted statutes that bar people under the age of 21 from carrying certain firearms in public in a concealed manner (again, with some exceptions), but permit them to carry those firearms openly (or, in one State, the opposite).[4]  Finally, ten States and the District of Columbia have set a minimum age of 21 to possess certain

---

129(b)(2)(A); Haw. Rev. Stat. § 134-9(a); 430 Ill. Comp. Stat. 66/25(1); 720 Ill. Comp. Stat. 5/24-1(a)(10); Md. Public Safety Code § 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); Minn. Stat. § 624.714; N.J. Stat. §§ 2C:58-3(c)(4), 2C:58-4(c); N.Y. Penal Law § 400.00(1); Okla. Stat. tit. 21 § 1272(A); R.I. Gen. Laws §§ 11-47-11, 11-47-18; S.C. Code § 23-31-215(A).  The provision of Delaware law barring people under the age of 21 from possessing certain firearms (and thus from carrying them in public) takes effect July 1, 2025.  Del. Code Ann. tit. 11, § 1448(a)(5)e.

[4]  Alaska Stat. §§ 11.61.220(a)(6), 18.65.705; Ariz. Rev. Stat. §§ 13-3102(A)(2), 13-3112(E); Ark. Code § 5-73-309; Colo. Rev. Stat. § 18-12-203(1)(b); Ky. Rev. Stat. § 237.110(4)(c); La. Rev. Stat. § 40:1379.3(C)(4); Mich. Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; Nev. Rev. Stat. § 202.3657(3)(a)(1); N.M. Stat. § 29-19-4(A)(3); N.C. Gen. Stat. § 14-415.12(a)(2); Ohio Rev. Code § 2923.125(D)(1)(b); Or. Rev. Stat. § 166.291(1)(b); 18 Pa. Cons. Stat. § 6109(b); Utah Code §§ 76-10-505, 76-10-523(5); Va. Code § 18.2-308.02(A); Wash. Rev. Code § 9.41.070; Wis. Stat. § 175.60(3)(a); Wyo. Stat. § 6-8-104(a)(iv), (b)(ii).

firearms in the first place (again subject, in some cases, to exceptions).[5]
Altogether, more than 35 jurisdictions have imposed *some* restriction on
the purchase, possession, or use of firearms by people under the age of
21.[6]

The restriction plaintiffs challenge, in other words, is hardly an
outlier; it is consistent with the way many States have elected to handle
this issue.  And courts across the country have largely upheld state laws
that regulate firearms with respect to people under the age of 21.
Importantly, many of these courts have upheld statutes like the
challenged provisions based on the historical record, and have agreed
that age-based restrictions are consistent with our Nation's tradition of
firearms regulation.  Given the nature of the analysis conducted in
those decisions, they remain sound under *Bruen*'s historical framework.

---

[5]  Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Del. Code
Ann. tit. 11, § 1448(a)(5); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill.
Comp. Stat. 65/2(a)(1), 65/4(a)(2); Iowa Code § 724.22; Md. Code Ann.,
Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv);
N.J. Stat. Ann. § 2C:58-6.1(b); N.Y. Penal Law § 400.00(1)(a); Wash.
Rev. Code Ann. § 9.41.240(2), (3).  This aspect of Delaware's law takes
effect on July 1, 2025.  *Supra* n. 3.

[6]  *See supra* nn. 3-5.

*See Bruen*, 142 S. Ct. at 2127-28 (characterizing pre-*Bruen* historical analyses as "broadly consistent with *Heller*"); *see also* U.S. Br. 12-13.

Most obviously, this Court itself has upheld the very statutes challenged here against a Second Amendment challenge, relying in substantial part on the historical record to do so. *See NRA I*, 700 F.3d at 199-204. In *NRA I*, the Court undertook a lengthy analysis of the Nation's historical traditions regarding gun ownership and possession by people under the age of 21. *Id.* It explained that, at the Founding, it was understood that jurisdictions could "disarm[] select groups for the sake of public safety," an approach, the Court observed, that was consistent with the "classical republican notion that only those with adequate civic 'virtue' could claim the right to arms." *Id.* at 200-01. Given that the common-law age of majority was 21, the Court explained, the Founders would likely have "supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id.* at 202. And in the nineteenth century, the Court added, a large range of States enacted restrictions on the use or purchase of firearms by those under the age of 21. *Id.* at 202-03. In short, the Court concluded, there is "considerable

evidence" of a "longstanding, historical tradition" of restricting the purchase or use of firearms by those under the age of 21. *Id.* at 203.

Other courts have agreed with *NRA I*'s assessment of history. Most notably, just earlier this year, the Eleventh Circuit held—in a unanimous opinion—that a Florida statute prohibiting persons under the age of 21 from purchasing firearms was "consistent with our Nation's historical tradition of firearm regulation." *Bondi*, 61 F.4th at 1320. The Eleventh Circuit canvassed the same historical sources on which this Court relied and came to the same conclusion (i.e., that the regulation of firearms in this context is consistent with history). The court explained that Alabama, Tennessee, and Kentucky "led the charge" in the 1850s "in passing laws that prohibited 18-to-20-year-olds from buying (or even possessing) arms." *Id.* at 1326. Soon after that, a "flurry of state regulations" in 17 other jurisdictions responded to "the problem of deaths and injuries that underage firearm users inflicted" by banning the sales of firearms to people under 21. *Id.* at 1327. Historians, the court added, "have confirmed that the public did not understand the [Second Amendment] to protect the rights of 18-to-20-year-olds to purchase" firearms; indeed, "much of the public at the time

supported [such] restrictions." *Id.* at 1329.  In short, that court held,

the Florida law in question was similar to statutes enacted by other

jurisdictions over a century ago, and so did "not infringe on the right to

keep and bear arms." *Id.* at 1331.  Other opinions are to similar effect.

*See Powell v. Tompkins*, 926 F. Supp. 2d 367, 385-89 (D. Mass. 2013),

*aff'd on alternative grounds*, 783 F.3d 332 (1st Cir. 2015); *Lara v.*

*Evanchick*, 534 F. Supp. 3d 478, 491 (W.D. Pa. 2021), *appeal docketed*,

No. 21-1832 (3d Cir.); *People v. Mosley*, 2015 IL 115872, ¶¶ 35-37.[7]

In short, Congress's decision to enact a "calibrated" statute

prohibiting federal firearms licensees from selling handguns to people

under 21, *NRA I*, 700 F.3d at 209, is consistent with the States'

approaches in this area, which have been upheld as constitutional in

light of our Nation's historical tradition.

---

[7] The two court of appeals opinions to reach contrary conclusions were
subsequently vacated.  *See Jones v. Bonta*, 34 F.4th 704, *vacated on*
*reh'g*, 47 F.4th 1124 (9th Cir. 2022) (vacated and remanded for trial
court to conduct further proceedings consistent with *Bruen*); *Hirschfeld*
*v. ATF*, 5 F.4th 407, *vacated*, 14 F.4th 322 (4th Cir. 2021) (vacated as
moot when plaintiffs aged out of the challenged restrictions).

## III.    The District Court Correctly Rejected Plaintiffs' Claims.

The district court correctly rejected plaintiffs' claims on the merits.  As this Court held in *NRA I*, and as the United States explains, U.S. Br. 31-38, the federal restrictions at issue here are consistent with the Second Amendment, insofar as they impose restrictions on young people that are consistent with those imposed throughout our Nation's history.  The amici States agree with the United States' position and write to emphasize the following points.

First, plaintiffs err in focusing heavily on historical state militia laws in contending both that the conduct regulated by the challenged statutory provisions fall within the Second Amendment's scope and that the challenged provisions lack a historical analogue.  Pls.' Br. 16-21, 26-30.  That reasoning conflates *rights* protected by the Second Amendment with *duties* imposed by law.  The law is full of duties that do not give rise to rights:  To take just one example, federal law requires most adult men to register for the armed forces draft, but there is no right to enlist in the armed forces.  And to the extent that plaintiffs view the text of the Second Amendment as compelling the conclusion that the Amendment's scope is linked to militia service, Pls.' Br. 16-17,

*Heller* repeatedly rejects that view, explaining that the Second Amendment protects "an individual right unconnected with militia service." 554 U.S. at 605; *accord, e.g.*, *id.* at 599 (explaining that "most" Americans linked the right to bear arms with "self-defense and hunting" at the Founding). Indeed, this Court made that point in *NRA I*, explaining that "the right to arms is not co-extensive with the duty to serve in the militia." 700 F.3d at 204 n.17.

In any event, plaintiffs are wrong to assert that "[a]t the Founding, the 'militia' was widely understood, . . . including in the unanimous judgment of the federal government and every state in the union, to include all men of at least 18 years of age," Pls.' Br. 17, and thus persons 18 or older must have had Second Amendment rights commensurate with those of adults. To the contrary, the States set a range of minimum ages for militia service in the eighteenth and nineteenth centuries, spanning from 16 to 21. *See* Kopel & Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 496, 533-89 (2019). Even then, the States reserved the right to change the minimum age for militia service, and frequently did so: Virginia, as one example, set the minimum age at 16 in 1705, but raised it to 21 in 1723,

lowered it to 18 in 1757, and then lowered it again to 16 in 1775. *Id.* at 577-80. There was therefore "no uniform age for militia service," *Nat'l Rifle Ass'n, Inc. v. Swearingen*, 545 F. Supp. 3d 1247, 1258 (N.D. Fl. 2021), *aff'd*, 61 F.4th 1317; rather, "[i]n times of war, the age for service in militia crept down toward sixteen" and "in times of peace it crept up towards twenty-one," 545 F. Supp. 3d at 1258. History, in other words, shows not that young people under the age of 21 were entitled to bear arms as full-fledged members of their political communities, but rather that they were called into service and asked to bear arms *by* those communities in times of significant need.

Second, plaintiffs are wrong to dismiss the relevance of historical sources from the nineteenth century. Pls.' Br. 35-42. As the Eleventh Circuit explained in *Bondi*, the historical record shows that, in the years immediately preceding and following the Civil War, at least 19 States and the District of Columbia enacted statutes that were very similar to the statute challenged here—i.e., generally prohibiting sales of at least some firearms to people under the age of 21. *Bondi*, 61 F.4th at 1326-28, 1331. Plaintiffs attempt to dismiss the relevance of these historical laws on several grounds, but none is persuasive.

20

To start, plaintiffs err in rejecting the relevance of Reconstruction Era sources categorically as "too late" to warrant weight in the analysis. Pls.' Br. 42.  To the contrary, the Supreme Court considered nineteenth-century history in both *Heller* and *Bruen*, describing Reconstruction Era perspectives on the scope of the Second Amendment as "instructive" in *Heller*, 554 U.S. at 615, and examining at length both antebellum and postbellum sources in *Bruen*, 142 S. Ct. at 2145-53.  Although the *Bruen* Court observed that there was "an ongoing scholarly debate on whether courts should primarily rely on" historical accounts from 1791, when the Second Amendment was ratified, or 1868, when the Fourteenth Amendment was ratified, *id.* at 2138; *accord id.* at 2162-63 (Barrett, J., concurring), it did not, as plaintiffs suggest, Pls.' Br. 35, tacitly resolve that question in favor of Founding Era sources.  To the contrary, the Court expressly stated it was "not address[ing]" (and thus not resolving) that dispute, because New York's good-cause regime was not supported by historical accounts from either period.  *Bruen*, 142 S. Ct. at 2138; *see Bondi*, 61 F.4th at 1323 (explaining that "*Bruen* is likely an exception in its ability to assume away the differences" between the scope of the Second Amendment right in 1789 and 1868).  Plaintiffs accordingly err

21

in suggesting that the Court should simply "end its analysis," Pls.' Br. 36, without examining historical evidence from the 1800s.

Plaintiffs are also wrong to argue that the historical record is insufficient to justify the challenged restriction even *assuming* that Reconstruction Era history is relevant. Pls.' Br. 36-42. The historical record establishes that, in the late 1800s, at least 20 jurisdictions imposed significant restrictions on young people under the age of 21, prohibiting them from purchasing certain firearms, carrying those firearms in public in some manner, or both. *Bondi*, 61 F.4th at 1331. Plaintiffs attempt to distinguish this raft of statutes, arguing that each should be "afforded little weight" because it either (a) came "too late in time"; (b) was enacted by a southern State (and thus might be tainted by racial animus); (c) was enacted by a western State (and thus might not be representative of national consensus); (d) was enacted by a State without a Second Amendment analogue (and thus might not have been "respect[ful]" of citizens' "right to bear arms"); or (e) applied only to "minors" (either expressly or by implication). Pls.' Br. 37-39. The Court should reject plaintiffs' divide-and-conquer strategy. The United States has shown that almost *half* of the States in the Union enacted statutes

broadly similar to the challenged restriction, and for similar reasons—as a "response[] to the problem of deaths and injuries that underage firearm users inflicted." *Bondi*, 61 F.4th at 1327; *see* U.S. Br. 32-33. That fact makes it easy for the Court to find, as in *Bondi*, that the challenged statutes do not violate the Second Amendment.

## CONCLUSION

For these reasons, the Court should affirm the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Sarah A. Hunger
ALEX HEMMER
SARAH A. HUNGER
Deputy Solicitors General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202
sarah.hunger@ilag.gov

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Blvd.
St. Paul, MN 55155

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

May 19, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 4,654 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Sarah A. Hunger
SARAH A. HUNGER

May 19, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Sarah A. Hunger
SARAH A. HUNGER